ELECTRONICS COMMUNICATIONS
CORP., Plaintiff–Appellant,

v.

TOSHIBA AMERICA CONSUMER
PRODUCTS, INC. and Audiovox Corpo-
ration, Defendants–Appellees.

No. 1772, Docket 96–9209.

United States Court of Appeals,
Second Circuit.

Argued May 22, 1997.

Decided Oct. 28, 1997.

Jeffrey L. Rosenberg, New York City (Rosenberg & Fein, New York City, of counsel), for Plaintiff–Appellant.

Thomas G. Gallatin, Jr., New York City (John J. Kirby, Jr., Michael K. Hertz, Maureen C. Shay, Latham & Watkins, New York City, of counsel), for Defendant–Appellee Toshiba America Consumer Products, Inc.

John Sullivan, New York City (Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief), for Defendant–Appellee Audiovox Corporation.

Before: WALKER, McLAUGHLIN and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Electronics Communications Corp. ("ECC") appeals from a judgment entered in the United States District Court for the Southern District of New York (Robert P. Patterson, *J.*) dismissing ECC's claims under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, for failure to state a claim, and dismissing ECC's pendent state law claims without prejudice. ECC alleges that Toshiba America Consumer Products, Inc. ("Toshiba") and Audiovox Corp. ("Audiovox") (collectively "Defendants") conspired to reduce the output of Toshiba cellular phone products in the United States and to boycott ECC. Audiovox, which sells Toshiba-manufactured phones in the United States under the Audiovox name, allegedly coerced Toshiba into ceasing independent distribution of Toshiba phones, including cancelling a distributorship agreement with ECC. We conclude, based on the allegations in the complaint, that the agreement cannot harm competition market-wide. We therefore affirm.

## I. BACKGROUND

ECC alleges in its amended complaint that Toshiba and ECC entered into an agreement in 1994 whereby ECC became a distributor of Toshiba-brand cellular phones in the United States. ECC and Toshiba cooperated in this endeavor between July 1994 and October 1995. Prior to the alleged agreement, these cellular phones, manufactured in Japan by Toshiba's corporate parent, were sold in the United States exclusively by Audiovox under the Audiovox name.

ECC further alleges that when Audiovox learned of Toshiba's plan to distribute phones under the Toshiba brand name through independent channels, Audiovox threatened to use economic and political pressure to deter Toshiba. Specifically, ECC contends that Audiovox threatened to cancel orders and business with Toshiba if Toshiba continued its plan to market Toshiba phones under its own name. ECC further claims that it heard "ruminations [sic] ... in the market" that Audiovox boasted of "Congressional contacts" who would "do [Audiovox's] bidding" if Toshiba continued to compete against Audiovox. ECC even alleges that the executive vice president of Audiovox's cellular division physically attacked a

Toshiba marketing manager at a trade show in a fit of rage. Through these alleged threats, apparently, Audiovox sought to prevent Toshiba from distributing cellular phones under the Toshiba name or, alternatively, to have itself appointed the exclusive distributor of Toshiba-brand cellular phones in the United States.

Due to these actions, ECC claims that Toshiba abruptly terminated its relationship with ECC in late 1995, despite repeated reassurances to ECC that the relationship would continue and substantial investment on ECC's part. ECC alleges that Audiovox's pressure, resulting in Toshiba agreeing with Audiovox that Toshiba would not introduce cellular phones under its own name, led to a reduction in the output of Toshiba-brand phones in the United States. Based on Audiovox's alleged market power, ECC claims that the agreement harms competition and constitutes an illegal restraint on trade. According to ECC, at the time Audiovox pressured Toshiba into ceasing distribution of Toshiba-brand phones, Audiovox had "very substantial market share and market power in one or more parts or segments of the cellular telephone equipment and accessories market, and maintain[ed] a monopoly, or a market share which approache[d] a monopoly" in alleged "parts or segments" of the market including certain cellular telephone stores and telephone companies that distribute Audiovox cellular phones. After Toshiba cancelled the alleged distributorship agreement with ECC, ECC brought this suit.

Defendants moved to dismiss the case, arguing that ECC does not have standing, as the complaint alleges that Toshiba, not ECC, was the victim of Audiovox's anticompetitive activity. According to Defendants, any harm to ECC was merely incidental to the unlawful conduct directed at deterring Toshiba from competing against Audiovox. Defendants also argued that ECC failed to state a claim under sections 1 and 2 of the antitrust laws.

The district court rejected Defendants' standing argument but dismissed the case for failure to state a claim. Regarding ECC's claim under section 1, which prohibits agreements in restraint of trade, the district court

determined that ECC failed to allege how the agreement reduced competition in the market for cellular phone products. The court noted that Toshiba products, those allegedly forced out of the market by the agreement, are in fact still in the market, only under the Audiovox brand name. The court determined that the complaint does not allege a reduction in the output of phones manufactured by Toshiba, only of phones sold under the Toshiba brand name. In addition, after determining that the agreement does not restrict the output of cellular phones, the court rejected ECC's claim under section 2, under which ECC alleged that Audiovox is illegally maintaining or threatening to obtain a monopoly in certain narrowly defined cellular telephone submarkets. The court also rejected ECC's section 2 claim because the court determined that ECC's allegations regarding the relevant markets under section 2 are flawed as a matter of law. ECC then brought this appeal.

## II. DISCUSSION

We first address ECC's argument that the district court improperly dismissed ECC's section 1 claim, in which ECC alleges that the agreement between Audiovox and Toshiba unreasonably restrains trade. We hold that the court properly dismissed this claim because ECC alleges only that the agreement resulted in the elimination of the Toshiba brand name from the cellular telephone market, not that it had an effect on competition market-wide. We next address ECC's argument that the district court erroneously dismissed ECC's monopolization claim under section 2. Because the agreement cannot affect market-wide competition, we hold that the court properly dismissed ECC's section 2 claim as well. We therefore need not reach Defendants' argument that ECC does not have standing.

### A. Standard of Review

 We review de novo the district court's decision to dismiss ECC's complaint under Fed.R.Civ.P. 12(b)(6). *See Valley Disposal, Inc. v. Central Vt. Solid Waste Mgt. Dist.*, 31 F.3d 89, 93 (2d Cir.1994). We will uphold the dismissal only if it appears that

ECC can prove no set of facts, consistent with its complaint, that would entitle it to relief. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989) ("[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' a claim must be dismissed.") (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *McLain v. Real Estate Bd.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (stating that the holding of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief ... applies with no less force to a Sherman Act claim'"). While *Conley* permits a pleader to enjoy all favorable inference from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations." *Furlong, M.D. v. Long Island College Hosp.,* 710 F.2d 922, 928 (2d Cir.1983). As the Supreme Court has stated, "[i]t is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). We evaluate ECC's complaint according to these well-established standards.

B. *Agreement in Restraint of Trade: Sherman Act Section 1*

■ Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. A complaint pleading a violation of section 1 must allege a contract, combination or conspiracy that unreasonably restrains trade. *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1059 (2d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3694 (U.S. Apr. 3, 1997) (No. 96–1570), *and petition for cert. filed,* 65 U.S.L.W. 3767 (U.S. May 5,

1997) (No. 96–1785). ECC argues that the complaint properly alleges that the agreement between Audiovox and Toshiba, whereby Toshiba ceased efforts to distribute Toshiba cellular phones independently under its own brand name, violates section 1. We disagree.

■ ECC's complaint alleges that Audiovox sells Toshiba-manufactured cellular phones under the Audiovox name and that Audiovox applied pressure to prevent Toshiba from selling identical phones independently under the Toshiba name. These allegations, if true, establish nothing more than that Audiovox sought to preserve its role as an exclusive distributor of Toshiba phones, a role it played for many years before Toshiba tried to distribute Toshiba-brand phones through ECC. This is a so-called vertical restraint. "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717, 730, 108 S.Ct. 1515, 1522–23, 99 L.Ed.2d 808 (1988). Absent price-fixing between a supplier and distributor, vertical restraints are generally subject to "rule of reason" analysis. *See id.* at 726–27, 108 S.Ct. at 1520–21; *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977); *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.,* 61 F.3d 123, 127 (2d Cir. 1995) (Walker, J.); *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir.1978) (in banc). This is so even if the distributor and manufacturer also compete at the distribution level, where, as here, the manufacturer distributes its products through a distributor and independently (so-called "dual distribution" arrangements). *See Smalley & Co. v. Emerson & Cuming, Inc.,* 13 F.3d 366, 368 (10th Cir.1993) (treating such an agreement as a vertical agreement between a supplier and distributor, not a horizontal agreement between competitors, and applying rule of reason analysis); *Illinois Corporate Travel, Inc. v. American Airlines, Inc.,* 889 F.2d 751, 753 (7th Cir.1989) (subjecting restrictions on travel price advertising to rule of reason

analysis, where travel agents also competed against airline in selling fares); *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 906 (6th Cir.1989) (characterizing restraints imposed in dual distribution arrangement as vertical, and applying rule of reason analysis, citing *Vertical Restraints Guidelines*, 50 Fed.Reg. 6263, 6265 (Dep't of Justice 1985) (notice)); *Copy–Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405, 408–09 (2d Cir.1981) (applying rule of reason analysis to restraints imposed on supplier by manufacturer, where dual distributorship existed).[1] Under rule of reasons analysis, an agreement will not violate the antitrust laws unless it can be shown that it will have an actual adverse effect on competition in the relevant market. *See Clorox Company v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir.1997); *K.M.B.*, 61 F.3d at 127.

To state a claim under section 1, it is not enough merely to allege that, as a result of the agreement between Toshiba and Audiovox, Toshiba-brand cellular phones no longer compete against Audiovox-brand cellular phones. The fact remains that the dispute involves one manufacturer's product, Toshiba cellular phones. Although two brand names are involved, this is essentially a dispute about the way one product is distributed, a question of intrabrand competition. We considered a similar antitrust challenge in *Oreck*. There, a manufacturer terminated a dealer that sold vacuum cleaners under the manufacturer's label, granting Sears exclusive rights to distribute the manufacturer's vacuum cleaners under a different label. *See* 579 F.2d at 128. Despite the fact that the case involved two competing brands of vacuum cleaners, because one manufacturer's product was involved we held that the agreement was not per se illegal and rule of reason analysis applied. *See* 579 F.2d at 131 n. 6 ("While it is true that, because of its unique facts [different brand-name products are at issue], this case does not fit exactly into the dealer substitution line of cases, appellee's argu-

ment does not persuade us that it therefore comes within the rule of per se illegality."). We noted that the plaintiff did not allege or prove that the manufacturer or Sears conspired to maintain high resale prices. *See id.* at 130–31. Here, as in *Oreck*, an actual adverse effect on interbrand competition is not established merely because an agreement removes from the marketplace one brand name under which a manufacturer's products are sold. *See id.* at 131; *cf. Clorox*, 117 F.3d 50 (affirming summary judgment dismissing antitrust claim where challenged trademark agreement limited only the way one brand name could be used).

 Nor is it a violation of the antitrust laws, without a showing of an actual adverse effect on competition market-wide, for a manufacturer to terminate a distributor like ECC and to appoint an exclusive distributor. *See Oreck*, 579 F.2d at 131; *see also Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1249 (5th Cir.1975) ("Lest any other former distributors succumb to the temptation of treble damages, we reiterate that it is simply not an antitrust violation for a manufacturer to contract with a new distributor, and as a consequence, to terminate his relationship with a former distributor, even if the effect of the new contract is to seriously damage the former distributor's business."). True, we recently held that an agreement between a supplier and its purchaser that disadvantaged the supplier's competitor could constitute a violation of the antitrust laws, even a per se violation. *See Discon*, 93 F.3d at 1061. In *Discon*, however, the alleged agreement between the purchaser and supplier involved a fraudulent scheme to defraud ratepaying telephone customers whereby the telephone company's purchasing agent bought services from the conspiring supplier at inflated prices, charged these to customers, and then received a partial rebate from the supplier. *See id.* at 1057–58. The Court distinguished the case from one involving a

1. ECC characterizes Audiovox as a "Contract Manufacturer" and Toshiba as an "Original Equipment Manufacturer" of products sold independently by Audiovox. ECC thus characterizes the two companies as competing manufacturers. Mere labels do not alter the essential nature of the economic relationship, however. *See TV*

*Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992). The allegations in the complaint establish that the relationship was essentially the same as the dual distribution arrangements that have repeatedly been analyzed as vertical, not horizontal.

typical exclusive distributorship arrangement because the conduct alleged was manifestly anticompetitive and no procompetitive rationale appeared on the face of the complaint. *See id.* at 1061. That is not the case here, as the allegations in ECC's complaint establish nothing more than a run-of-the-mill exclusive distributorship controversy, where a former exclusive distributor is attempting to protect its competitive position vis a vis its supplier. Such exclusive distributorship arrangements are presumptively legal. *See id.* (citing *Oreck*, 579 F.2d at 131).

■ The allegations in ECC's complaint, if true, do not establish that the agreement between Audiovox and Toshiba adversely affects market-wide competition. ECC rests its entire case on the fact that the Toshiba name will no longer be available in the cellular telephone market, calling this a reduction in output of Toshiba phones that benefits only Audiovox. Toshiba phones, however, will still be available, presumably in whatever number is demanded by consumers. The complaint does not allege how Audiovox could sensibly reduce its sales of the phones and increase its prices. The allegations show, at most, a slight reduction in competition between Audiovox and Toshiba regarding the distribution of Toshiba-manufactured phones. It is settled, however, that to sustain a section 1 claim, a plaintiff "must … show more than just an adverse effect on competition among different sellers of the same product…." *K.M.B.*, 61 F.3d at 127; *see also Illinois Corporate Travel*, 889 F.2d at 753 ("An agreement between American and its travel agents does not reduce supply … only an agreement among the air carriers could do that.").

Although competition from Toshiba could deter Audiovox from attempting to increase its margin on Toshiba phones by increasing price, the Toshiba–ECC endeavor was very limited in scope and would have had only a limited effect on Audiovox sales. In any event, ECC has not alleged how this slight reduction in intrabrand competition affects the market as a whole, given the continuing presence of Toshiba phones in the market— in whatever number consumers demand— and the lack of an allegedly anticompetitive agreement between Toshiba or Audiovox and their competitors.

Accordingly, although ECC's amended complaint makes a single, general allegation that Toshiba's decision to terminate ECC as a distributor would diminish competition, we do not see how this could be the case. Other allegations in the amended complaint, as well as common knowledge, make it clear that other large competitors (Motorola and Mitsubishi are mentioned in the complaint) compete in the cellular telephone market. Without any allegation as to how market-wide competition will be affected, the complaint fails to allege a claim on which relief may be granted. *See Furlong*, 710 F.2d at 928 (notice pleading "does not permit conclusory statements to substitute for minimally sufficient factual allegations").

While Audiovox very well may have brought pressure to bear on Toshiba to preserve its role as an exclusive distributor of Toshiba products, that is not illegal without more. In the absence of price-fixing, agreements to terminate distributors, even at the behest of competing distributors who seek to maintain exclusive distribution rights, have repeatedly been sanctioned by the courts. *See, e.g., Oreck*, 579 F.2d at 133–34; *Bailey's, Inc. v. Windsor Am., Inc.*, 948 F.2d 1018, 1030 (6th Cir.1991) (upholding under rule of reason analysis termination of dealer after several competing dealers told supplier that they would no longer carry supplier's goods if first dealer continued to carry supplier's line); *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 658 (7th Cir. 1987) (upholding supplier's termination of dealer even though supplier met with other dealers to discuss plans to reorganize supplier's distribution system beforehand); *cf. Sharp*, 485 U.S. at 726–27, 108 S.Ct. at 1520–21 (subjecting alleged agreement between supplier and dealer to terminate price-cutting second dealer to rule of reason analysis, requiring a showing of adverse competitive effects absent evidence of price fixing). Manufacturers must enjoy some freedom to determine how to distribute their products without subjecting themselves to attack under the antitrust laws by disappointed distributors, absent activity that is manifestly

anticompetitive. The fact that a distributor applies pressure to preserve its exclusive role does not alone raise special antitrust concerns.

As we reasoned in *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir.1993), "[i]nsisting on proof of harm to the whole market fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors." While ECC's allegations suggest that it was harmed by Toshiba's decision to terminate it as a distributor, they do not show that the agreement threatens to harm overall competition in the cellular telephone market. Accordingly, its section 1 claim was properly dismissed.

## C. *Monopolization: Sherman Act Section 2*

Section 2 of the Sherman Act provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize, any part of the trade or commerce among the several States ... shall be deemed guilty of a felony." 15 U.S.C. § 2. A claim under section 2 must allege "(1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir.1988). Intent alone is not sufficient, however; the defendant's power in the relevant market must be established, to establish whether the defendant is a monopolist or is threatening to become one. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455–56, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993).

ECC alleges that the agreement between Audiovox and Toshiba was entered into with the intent "to protect, continue and extend AudioVox's market share and market power in and with respect to the cellular telephone equipment market generally, and more specifically, in that segment, part or component of that market comprised and represented by the Bell Carriers and Mobile Electronic Stores." We reject ECC's section 2 claim for substantially the same reasons outlined in our discussion of ECC's section 1

claim. The agreement between Audiovox and Toshiba cannot harm competition, and therefore cannot serve to further an alleged monopolization scheme. Because we dispose of ECC's section 2 claim on this ground, we need not address the argument that ECC fails to allege a proper relevant market.

## D. *Leave to Amend*

The district court denied ECC leave to file a second amended complaint, determining that ECC could not allege harm to a relevant market. We review the district court's decision for abuse of discretion. *See Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 19 (2d Cir.1995). In light of the foregoing discussion, we believe the district court properly denied ECC leave to file yet another amended complaint. Because the complaint does not reveal how the alleged agreement could conceivably harm competition market-wide, granting leave to amend would have been futile. *See id.* (citing futility as "an adequate ground for denial of a motion to amend"); *accord TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir.1992) (upholding denial of leave to amend antitrust claims because amendment would be futile).

## III. CONCLUSION

The judgment of the district court is hereby affirmed.