Michael COLLINS, Plaintiff,

v.

William M. STASIUK, individually, and Joel A. Miele, Sr., individually, Defendants.

No. 98 Civ. 7806(CM).

United States District Court, S.D. New York.

July 8, 1999.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Michael J. Collins, plaintiff.

Paul F. Marks, Paul A. Crotty, Corporation Counsel of the City of NY, New York City, for William M. Stasiuk, Joel A. Miele, Sr., Thomas Hook, defendants.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

McMAHON, District Judge.

Plaintiff brought this action, in which he alleges that he was retaliatorily terminated as Police Director of the New York City Department of Environmental Protection (the "DEP"), against Defendants Stasiuk (the Deputy Commissioner of the DEP) and Miele (Commissioner of the DEP) in their individual capacities. He now seeks leave to amend the complaint to assert a claim directly against the City of New York (the "City"). Plaintiff claims that liability can be imputed to the City, notwithstanding the Supreme Court's ruling in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because

the individuals who decided to terminate his employment held "high ranking, policy making positions." (Plaintiff's Memorandum Pursuant to Rule 15(a) for Leave to Serve an Amended Complaint, at 3). The City argues that plaintiff's application should be denied because it is made too late in the day and because any amendment would be futile, since plaintiff cannot state a viable cause of action against the City.

The City is correct. Accepting, for purposes of this motion, that defendants and the other two individuals who allegedly participated in the decision to terminate plaintiff's employment (First Deputy Commissioner Diana Chapin and Chief of Staff/Special Counsel Charles Sturcken) qualified as "policy makers" at DEP does not mean that every decision they make is a policy decision. In particular, it does not mean that they were making policy on behalf of the City when they decided to fire Collins, so as to fall within the exception to *Monell* for "a single act taken by the municipal officer who, as a matter of state law, has final policy-making authority with respect to the area in which the action is taken." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

■ Plaintiff asks the Court to infer from the high rank and the managerial authority vested in theses four individual by the New York City Charter—which authority includes the power to recruit personnel and to hire and fire—that they have final policy-making authority with regard to personnel policy at DEP. There is a glaring fallacy in plaintiff's inferential leap. While these individuals may well have had final authority to make an individual personnel decision concerning plaintiff (who was himself a relatively high-ranking official at DEP), the hiring, promotion, demotion or termination of a single individual is NOT a "municipal policy." The dictionary defines the word "policy" as "a definite course or method of action selected from among alternatives and in light of given conditions to guide and determine present *and future* decisions" (emphasis added) and "a high-level overall plan embracing the general goals and acceptable procedures, especially of a governmental body" (Webster's New Collegiate Dictionary, 1977 ed.). The decision to fire one man, for whatever reason, is neither a course or method of action to help guide and determine present and future decisions nor a high-level overall plan. It is a singular act, applicable to one individual, in the unique circumstances of his case. It is, in short, a personnel decision and nothing more. It is hard to imagine any decision that falls farther outside the common understanding of the word "policy."

■ Of course, an individual personnel decision carried out by a final policy-maker pursuant to a definite course or method of action that was designed to guide future decision making, or in furtherance of some governmental body's high-level overall plan, would qualify for the *Monell* exception. But not every personnel decision made by a senior policy-maker falls into that category. There is no evidence in this record that Stasiuk, Miele, Chapin and Sturcken terminated plaintiff's employment either as part of a formal, officially promulgated policy of the DEP to get rid of whistle blowers or pursuant to a pervasive departmental custom and practice of so doing. Thus, plaintiff has not overcome the strong presumption that a personnel decision is just a personnel decision, and nothing more.

Nor is there any evidence that these four individuals have any authority, let alone final authority, to define or make a City policy generally applicable to all City employees—or even, for that matter, to all DEP employees. Per the terms of the New York City Charter, that authority is vested finally and exclusively in the Commissioner for the Department of Citywide Administrative Services. *See* N.Y. City Charter §§ 3, 8(a), 21, 28, 811, 814(c). Several years ago, Judge Cote of this Court had occasion to consider this precise

question in a case brought by another employee of the City of New York. In *Soto v. Schembri*, 960 F.Supp. 751, 759 (S.D.N.Y.1997), she ruled as follows:

> Plaintiffs must demonstrate that the named officials have policymaking authority under state law.... [T]he Mayor, the City Council and the Personnel Director are the final policymakers with regard to personnel decisions, not agency heads.... *[T]he power to make employment decisions alone does not in itself give rise to potential Section 1983 liability.* (Emphasis added)

Judge Cote's decision is manifestly correct. If plaintiff's argument had merit, then every decision by a hig-ranking official to hire or fire would constitute a "policy" with respect to the affected individual, and every senior decisionmaker who had ultimate authority over anyone's employment could be deemed to have "final authority over policy" within the meaning of the *McMillian* exception to *Monell*. The absurdity of that result—which would effectively vitiate *Monell*—is apparent on its face.

Because plaintiff's proposed amendment does not state a claim on which relief may be granted, it would be futile to grant the motion. *See Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.,* 129 F.3d 240, 246 (2d Cir.1997). Therefore, plaintiff's application for leave to amend is denied.

This constitutes the decision and order of the Court.