E & L CONSULTING, LTD., doing business as C.B.C. Lumber, Co., and C.B.C. Wood Products, Inc., Plaintiffs–Appellants,

v.

DOMAN INDUSTRIES LIMITED, Eacom Timber Sales Ltd. and Sherwood Lumber Corp., Defendants–Appellees.

Docket No. 05–1751–CV.

United States Court of Appeals, Second Circuit.

Argued: Oct. 26, 2005.

Decided: Dec. 15, 2006.

E. Christopher Murray (Megan F. Carroll, on the brief) Reisman, Peirez & Reisman, L.L.P., Garden City, NY, for Plaintiffs–Appellants.

Thomas J. McNamara, Certilman Balin Adler & Hyman, LLP, East Meadow, NY, for Defendant–Appellee Sherwood Lumber Corp.

Kelly M. Hnatt (Matthew P. Bosher, Leigh M. Nemetz, on the brief) Willkie Farr & Gallagher LLP, New York, NY, for Defendants–Appellees Doman Industries Limited and Eacom Timber Sales Ltd.

Before WINTER, POOLER, and SOTOMAYOR, Circuit Judges.

WINTER, Circuit Judge.

E & L Consulting, Ltd. ("E & L"), which does business under the name C.B.C. Lumber, Co., and C.B.C. Wood Products, Inc. appeal from Judge Trager's dismissal of their complaint against a Canadian lumber company and its exclusive distributor. The complaint asserts, among other things, that a distribution agreement between appellees violates Section 1 of the Sherman Act, that the agreement is part of a monopolization scheme, and that the defendants are engaged in unlawful tying of products. We affirm principally because appellants have failed to allege facts that, if proven, would demonstrate harm to competition.

## BACKGROUND

Because this is a dismissal under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, we view the allegations of the complaint in the light most favorable to appellant. *Leeds v. Meltz*, 85 F.3d 51, 52 (2d Cir.1996). Those allegations are as follows.

From 1990 until 2004, E & L was the distributor of green hem-fir lumber in New York, New Jersey, and Pennsylvania for appellees Doman Industries Limited ("Doman") and Eacom Timber Sales Ltd., a Doman subsidiary. The termination of that distribution arrangement gave rise to the present dispute.

Green hem-fir lumber is an inexpensive, durable wood that is "often utilized for homebuilding," particularly in the northeast. There is no hem-fir or green hem-fir tree; the product is a manufactured combination of different woods. Doman and Eacom together supply 95 percent of the green hem-fir lumber sold in New York, New Jersey, Connecticut, Rhode Island, Maryland, Delaware, and Pennsylvania.

Beginning in 1990, E & L had an arrangement with Doman under which E & L "would take delivery, but not ownership, of the green hem-fir lumber products at its port facility in Red Hook, Brooklyn, New York." E & L sold the lumber on Doman's behalf at prices set by Doman, and Doman provided E & L with set monthly payments and commissions. E & L had arrangements with two other green hem-fir distributors, Atlantic Coast Lumber Co. in Rhode Island and Futter Lumber in Delaware.

By 1998, Doman had severed its relationship with Atlantic Coast Lumber. To replace Atlantic Coast, Doman contracted with appellee Sherwood Lumber Corp., a New York corporation that sells lumber—including green hem-fir—and finished wood products. Under its agreement with Doman, Sherwood purchased green hem-fir lumber from Doman and resold it out of the port in New London, Connecticut. Doman prohibited E & L from selling lumber in the area served by Sherwood.

In 2003, Doman cancelled its agreement with Futter Lumber and replaced it with Sherwood. Doman continued to prohibit E & L from selling green hem-fir lumber in states served by Sherwood.

Doman allowed Sherwood to purchase Doman products outright and resell them itself, but it rejected E & L's request for the same arrangement. Furthermore, Doman "provided Sherwood with substantial discounts or favorable price structures for green hem-fir lumber as compared to the pricing Doman required of E & L." As a consequence, Sherwood was able to sell Doman lumber for "substantially lower prices than Doman permitted E & L." For example, Doman required E & L to sell 2x6 units of green hem-fir lumber for $314

while Sherwood was able to sell the same thing for $296.

On January 30, 2004, Doman terminated its distribution agreement with E & L. On February 1, 2004, Doman notified its customers that Sherwood had become the exclusive distributor of Doman green hem-fir lumber in areas previously served by E & L, Futter, and Atlantic Coast.

E & L alleges that there are no commercially feasible alternative sources of green hem-fir lumber. Only one other company beside Doman supplies green hem-fir lumber—Timber West—and it supplies very little. Furthermore, no shipping carriers operate a route from the western United States to Brooklyn, and, consequently, the only way to get lumber from Timber West is by rail. This increases the cost of the lumber by "more than 10 percent," rendering it "uncompetitive for resale." In addition, the only ocean shipping line transporting lumber from Canada to New York told E & L that "no shipments [of non-Doman lumber products] could be made for an indefinite period of time." E & L alleges that Doman's reservation of all potential shipping methods was intended to prevent E & L and other distributors from obtaining an alternative source of supply.

E & L asserts that only a handful of other types of lumber are suitable for the framing of homes, and they cost 25 percent more than green hem-fir, which "precludes these products from being adequate substitutions." Once Sherwood obtained exclusive distribution rights in the northeast, it raised the price of green hem-fir lumber by, in some cases, "over 20 percent."

Finally, "Sherwood is now requiring customers who want to purchase green hem-fir lumber also [to] purchase Sherwood finished wood products." In the market for finished wood products, Sherwood is a competitor of plaintiff C.B.C. Wood Products. The complaint alleges that Doman and Sherwood conspired to allow Sherwood "to purchase green hem-fir lumber at a substantially reduced price so as to enable Sherwood to tie the sale of this product to the sale of finished wood products, such as plywood, and to drive Sherwood's competitors out of business."

In February 2004, E & L and C.B.C. Wood Products brought suit against Doman and Sherwood. Their amended complaint asserts five claims under the federal antitrust laws: (i) that the Doman–Sherwood distribution agreement violates Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) that the defendants have engaged in a monopolization scheme in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (iii) that defendants violated Section 7 of the Clayton Act, 15 U.S.C. § 18; (iv) that they engaged in an illegal tying scheme in violation of Sections 1 and 2 of the Sherman Act; and (v) that they have engaged in illegal price discrimination in violation of Section 2 of the Robinson–Patman Act, 15 U.S.C. § 13. The complaint seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. The complaint also alleges state law claims including breach of contract, tortious interference with contract, and violations of New York's General Business Law § 340.

On June 7, 2004, Doman and Sherwood separately moved to dismiss the plaintiffs' complaint for failure to state a claim. In a Memorandum and Order dated March 14, 2005, the district court granted the motions. *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 360 F.Supp.2d 465 (E.D.N.Y. 2005).

The district court indicated that it was inclined to dismiss the suit against Doman as a matter of comity because Doman was in the Canadian equivalent of Chapter 11

bankruptcy.[1] *Id.* at 470–71. It nevertheless resolved the claims "on substantive (antitrust) rather than procedural (comity) grounds" in order to avoid "unnecessary duplicative litigation." *Id.* at 471.

The district court concluded that plaintiffs' federal antitrust claims failed because the complaint did not adequately allege a relevant product market, *id.* at 471–74, or injury cognizable under the antitrust laws, *id.* at 474–76. With no remaining federal questions, Judge Trager declined to exercise supplemental jurisdiction over the state law claims. *Id.* at 477. The present appeal ensued.

## DISCUSSION

### a) *Standard of Review*

■ We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002).

1. Under the terms of Doman's bankruptcy proceeding, "no suit, action, enforcement process, extra-judicial proceeding or proceeding of any other nature ... shall be proceeded with or commenced against [Doman]." Following its reorganization, Doman emerged from bankruptcy in July 2004.

2. We indulge in this assumption despite seeming anomalies in some factual allegations. For example, the complaint alleges that a 10% increase in transportation costs when rail is used renders green hem-fir lumber from another producer "uncompetitive for resale" because of the elasticity of demand for the product while also alleging that Sherwood has raised prices by over 20% and that alternative kinds of suitable lumber sell for 25% more than green hem-fir. Moreover, the complaint alleges that Doman has sold green hem-fir lumber at a discount to Sherwood to allow the latter to sell green hem-fir lumber at lower prices than E & L and to tie the sale of that product to Sherwood's sale of finished wood products, conduct that hardly benefits Doman.

3. One basis on which the district court dismissed the complaint was its conclusion that

For purposes of such a review, we accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.[2] *Id.* Dismissal is appropriate only where the plaintiffs can prove no set of facts consistent with their complaint that would entitle them to relief. *Elec. Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 242–43 (2d Cir.1997). However, conclusory statements are not a substitute for minimally sufficient factual allegations. *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 927 (2d Cir.1983).

### b) *Section 1 Claim*

■ Appellants' Sherman Act Section 1 claim, based on the Doman–Sherwood distribution agreement, fails because they have not alleged an injury to competition, an element of a *prima facie* Section 1 claim.[3]

plaintiffs had not alleged "antitrust injury," *E & L Consulting, Ltd.*, 360 F.Supp.2d at 474, because they had failed to "allege some type of harm to competition market-wide," *id.* at 475. We agree with the district court that the plaintiffs' failure to proffer allegations of harm to competition is fatal to their antitrust claims. However, the failure to allege harm to competition is analytically distinct from failure to plead antitrust injury. *Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) ("Antitrust injury and competitive injury are conceptually distinct.").

Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). An antitrust plaintiff "must show not only injury-in-fact, but also that [the injury] constitutes ... the kind that the antitrust laws are designed to prevent and that [is] congruent with the rationale for finding an antitrust violation in the first place." Areeda, Hovenkamp & Blair, *Antitrust Law* § 335c4 (2000). It should go without saying, therefore, that a party cannot

■ Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. It has long been "recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). A violation of Section 1 generally requires a combination or other form of concerted action between two legally distinct entities resulting in an unreasonable restraint on trade. *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.,* 386 F.3d 485, 506 (2d Cir.2004). If a restraint alleged is among that small class of actions that courts have deemed to have "such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit," it will be unreasonable *per se. State Oil,* 522 U.S. at 10, 118 S.Ct. 275. Most antitrust claims, however, are analyzed under a "rule of reason" analysis which seeks to determine if the alleged restraint is unreasonable because its "anticompetitive effects outweigh its procompetitive effects." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 342, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).

■ The complaint alleges a vertical restraint between a supplier (Doman) and a distributor (Sherwood).[4] The agreement between Doman and Sherwood designating the latter as the exclusive distributor of Doman green hem-fir in the northeast, like any commercial agreement, restrains trade. *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 62

L.Ed. 683 (1918) ("Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence."). But, critically, nothing in the complaint suggests that this agreement results in either a "predictable and pernicious" (*per se* violation) or "unreasonable" (rule of reason violation) effect on competition. It is not "a violation of the antitrust laws, without a showing of actual adverse effect on competition market-wide, for a manufacturer to terminate a distributor ... and to appoint an exclusive distributor." *Elecs. Commc'ns. Corp.,* 129 F.3d at 244.

Doman is alleged to have a market share in green hem-fir lumber amounting to 95% in the northeastern United States. Appellants do not assert that Doman's market share is somehow an illegal monopoly and seek no relief on that ground. But, they allege, the exclusive distributorship with Sherwood further harms competition. However, appellants' hypothesizing of an unreasonable effect on competition fails because such a vertical arrangement provides no monopolistic benefit to Doman that it does not already enjoy and would not continue to enjoy if the exclusive distributorship were enjoined. To put it another way, had Doman established its own in-house distribution system with the same monopoly that Sherwood is alleged to possess, there would have been no increase in the restriction of output of green hem-fir lumber and in the resultant misallocation of resources.

■ Indeed, an exclusive distributorship would be counterproductive so far as any

establish antitrust injury without establishing a violation of the antitrust laws, which, under Section 1, must involve an injury to competition.

4. "Restraints imposed by agreement between competitors have traditionally been denom-

inated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717, 730, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).

monopolization goal of Doman is concerned. A monopolist manufacturer of a product restricts output of the product in order to maximize its profits. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 583–84 and n. 6, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also* H. Hovenkamp, *Economics and Federal Antitrust Law* 1–36 (1985). The power to restrict output to maximize profit is complete in the manufacturing monopoly, and there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product. *See Lamoille Valley R.R. v. ICC,* 711 F.2d 295, 318 (D.C.Cir.1983); 3 Phillip Areeda & Donald F. Turner, *Antitrust Law* § 725b (1978). On the contrary, a firm with a monopoly at the retail distribution level will further reduce output to maximize *its* profits, thereby reducing the sales and profit of the monopoly manufacturer. *See Cont'l T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 56, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 767 (2d Cir.1995); *see also R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!,* 462 F.3d 690, 696–97 (7th Cir.2006); *Byars v. Bluff City News Co.,* 609 F.2d 843, 861 (6th Cir.1979). Like any seller of a product, a monopolist would prefer multiple competing buyers unless an exclusive distributorship arrangement provides other benefits in the way of, for example, product promotion or distribution. *See Cont'l T.V.,* 433 U.S. at 54–56, 97 S.Ct. 2549. In fact, we have explicitly noted that "a vertically structured monopoly can take only one monopoly profit." *G.K.A. Beverage,* 55 F.3d at 767.

The only detriment to competition alleged to result from the Doman–Sherwood agreement is that "end-users of lumber and finished wood products have fewer options to purchase their required supplies and are now required to pay artificially inflated prices." This, by itself, is not a sufficient allegation of harm to competition caused by the exclusive distributorship, again, because the alleged single source and price increase, even if monopolistic, is something Doman can achieve without the aid of a distributor.

■ Thus, we have noted that "exclusive distributorship arrangements are presumptively legal." *Elecs. Commc'ns. Corp.,* 129 F.3d at 245. To be sure, we have never held that all exclusive arrangements are reasonable as a matter of law. In *Geneva Pharmaceuticals,* for example, we vacated a grant of summary judgment on a Section 1 claim that was based on an exclusive supply agreement between a drug-maker and a supplier of the active ingredient in the drug. *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.,* 386 F.3d 485 (2d Cir.2004). We acknowledged the general rule that "it usually does not further harm competition for a monopolist in one market to leverage its advantage into a monopoly in a downstream market." *Id.* at 508 n. 4. However, in that case there was a "window of monopoly opportunity [that] is unique." *Id. Geneva* involved an allegation of two temporary, related monopolies in different products, a drug and its active ingredient. Moreover, the two firms, which had overlapping ownership, were jointly involved in predatory practices designed to extend their respective temporary monopolies by deterring entry by competitors. *Id.* at 492–93 (noting that the manufacturer of the active ingredient misled the plaintiff, who was a potential competitor with the drug manufacturer, telling it that the ingredient manufacturer "had no exclusive arrangement with respect to clathrate and that it could supply clathrate to [the drug manufacturer]" and attempting to "dissuade [the competitor] from pursuing its FDA application on the pretext that others were ahead of it, and

that its market share would thus be proportionally smaller.").

The facts in *Geneva*, therefore, were quite different from the claim in a typical exclusive distribution case, like the present one, where it is alleged only that a monopolist manufacturer is trying to extend its monopoly into the distribution or sale of its product. Unlike *Geneva*, the present case is a "run-of-the-mill exclusive distributorship controversy, where a former exclusive distributor is attempting to protect its competitive position vis a vis its supplier." *Elecs. Commc'ns. Corp.*, 129 F.3d at 245. The complaint simply does not allege, therefore, "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir.1993) (emphasis in original).

c) *Section 2 of the Sherman Act*

■ Appellants' Section 2 monopolization claim fails for similar reasons. Section 2 makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States or with foreign nations." 15 U.S.C. § 2. A viable claim under Section 2 challenging a distributorship agreement must, like a Section 1 claim, show a harm to competition. *Elecs. Commc'ns. Corp.*, 129 F.3d at 246 ("The agreement between Audiovox and Toshiba cannot harm competition, and therefore cannot serve to further an alleged monopolization scheme."). For the reasons stated above, the complaint fails to allege facts that would show that the exclusive distribution agreement between Doman and Sherwood harms competition, and it cannot be the basis of a monopolization scheme under Section 2.

■ Nor is the allegation that Doman reserved shipping space with the intent to exclude other manufacturers of green hem-fir lumber from that space sufficient to allege a Section 2 violation. The reservation of space necessarily excludes, and is intended to exclude, producers of lumber of all kinds, including green hem-fir, and suppliers of all other goods for that matter, from using that same shipping space. There is no allegation that Doman did not ship lumber in the reserved space or did not do so in order to sell the lumber. Firms do not violate the antitrust laws by meeting customers' demands even when the use of available shipping facilities may make it more difficult for competitors.

d) *Tying*

Appellants also assert antitrust violations based on an alleged tying scheme. They claim that Doman has allowed Sherwood to purchase green hem-fir lumber at a reduced price so that Sherwood can tie the sales of green hem-fir lumber to the sales of "finished wood products."

■ A tying arrangement is " 'an agreement by a party to sell one product but only on the condition that the buyer also purchase[ ] a different (or tied) product.' " *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56 (2d Cir.1980) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)). We have required plaintiffs claiming an illegal tying arrangement to show: "first, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a 'not insubstantial' amount of interstate commerce in the 'tied' market." *De Jesus v. Sears, Roebuck & Co.*,

87 F.3d 65, 70 (2d Cir.1996) (quoting *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1516–17 (2d Cir.1989)).

Appellants' complaint alleges that green hem-fir lumber is the tying product and "finished wood products" are the tied products. While green hem-fir lumber is a product with a useable definition that gives notice to the appellees of the alleged tying product, "finished wood products" is a term that covers an enormous variety of goods with an enormous number of uses.[5] The phrase is exceptionally broad and vague, potentially encompassing hundreds of different products, and the complaint does not attempt to define the phrase or even narrow the range of things or products to which the phrase might refer. Appellants, moreover, have not specified in the complaint, and declined to do so at oral argument, precisely which of this vast range of products appellee has tied to green hem-fir lumber.

▇▇ Notice pleading requires at a minimum that the pleading give the opposing party notice of the nature of the claim against it, including which of its actions gave rise to the claims upon which the complaint is based. The claim must be sufficiently particular to allow the defendant to commence discovery and prepare a defense. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988).

▇▇ The complaint is therefore insufficient to allege a tying violation. Even under notice pleading, an antitrust defendant charged with illegal tying is entitled to some specificity as to the conduct alleged to be coercive, the customers who would have purchased a product elsewhere but for the coercion, the particular products sold as a result of the coercion, the anticompetitive effects in a specified market, and the effect on the business of the plaintiff. *See Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387–88 (10th Cir.1980). This complaint does not do this. Its allegations make no attempt to define the conduct alleged to be unlawful and potentially involve every sale by Sherwood during the period covered by the complaint. The allegation is therefore insufficient to survive a motion to dismiss. *Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283 (2d Cir.2006) (noting that, though pleading rules are permissive, they do not allow "conclusory statements to substitute for minimally sufficient factual allegations").

e) *Robinson–Patman Act*

▇▇ Plaintiffs' claim under the Robinson–Patman Act, 15 U.S.C. § 13, was also properly dismissed. As a threshhold issue, plaintiffs have no standing to assert any claims under the Robinson–Patman Act because that statute applies only to price discrimination between different purchasers. 15 U.S.C. § 13(a). "[C]onsignment contracts are not covered." Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and its Practice* § 14.6d n. 31 (2d ed.1999). This requirement applies not just to Section 2(a) but also to the other provisions of the Robin-

---

**5.** We note that, according to the World Forestry Institute, "[t]he finished wood products market—which includes furniture, flooring, beams, windows, doors, frames, moulding and millwork—is a $28 billion industry." *See* http://wfi.worldforestry.org/ trade–2.htm (last visited Oct. 5, 2006). One prominent online directory for timber-related products lists all of the following under "finished wood products": windows, doors, stairs, steps, handrails, parquet, wooden floors, wooden houses, pallets, tare, packaging, boxes, saunas, barrels, tubs, wooden tables, kitchen tools, toys, artwork, straw, plaiting, wickerwork, wooden musical instruments, fences, gates, railing, pellets, briquettes, and "other." *See* www. wood -me.com/timber—cat/9/Finished— wood—products (last visited Oct. 5, 2006).

son–Patman Act. "Preferences granted to a legitimate sales agent are not actionable [under the Robinson–Patman Act] because there is no sale to the agent." *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367, 371–73 (3d Cir.1985) (noting that the rule applies to subsections 2(a), (c), (e), and (f)). According to the complaint, "E & L's arrangement with Doman and Eacom was that E & L would take delivery, but not ownership, of the green hem-fir lumber products . . . and would then sell this product on Doman's behalf to lumberyards." By E & L's own admission, it was merely a sales agent, and thus it cannot assert a claim under the Robinson–Patman Act.

Even if plaintiffs did have standing, their claim would still fail. The Act contains a number of provisions, but the allegation that Doman has offered Sherwood "discounted and/or favorable price structuring levels" implicates only Section 2(a). 15 U.S.C. § 13(a). Section 2(a) makes it "unlawful . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly. . . ." 15 U.S.C. § 13(a). A necessary component of a Section 2(a) claim is "likelihood of competitive injury resulting from the alleged discrimination." *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir.1987). Because plaintiffs have failed to allege any facts that could demonstrate competitive injury, their claim under subsection 2(a) of the Robinson–Patman Act must fail.

### f) *Remaining Claims*

Plaintiffs also asserted a federal claim for violations of Section 7 of the Clayton Act, 15 U.S.C. § 18. That section addresses mergers and the acquisition by one corporation of the stock of another. Nothing in the plaintiffs' complaint relates to anything in Section 7, and consequently that claim was properly dismissed.

With all federal claims dismissed, the dismissal, without prejudice, of the remaining state claims was proper. 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir.2001) ("[T]he state-law claims should be dismissed so that state courts can, if so called upon, decide for themselves whatever questions of state law this case may present.").

## CONCLUSION

We therefore affirm.