**DISCON, INCORPORATED,**
Plaintiff–Appellant,

v.

**NYNEX CORPORATION, Nynex Material Enterprises, New York Telephone Company, Robert J. Eckenrode, and Bernard O'Reilly, Defendants–Appellees.**

No. 1126, Docket 95–7673.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1996.

Decided Aug. 26, 1996.

Samuel A. Cherniak, New York City (Phyllis Gelman, Gelman & Feinberg, New York City; Goldstein, Navagh, Bulan & Chiari, Buffalo, NY, on the brief), for plaintiff-appellant.

Guy M. Struve, New York City (James D. Liss, Vincent T. Chang, Seth R. Lesser, Davis Polk & Wardwell; Edward S. Bloomberg, Kevin J. English, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, OAKES and PARKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal involves an antitrust suit brought by a former supplier alleging that its purchaser and a competitor acted in violation of the Sherman Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff-appellant Discon, Inc. ("Discon") appeals from the June 14, 1995, judgment of the United States District Court for the Western District of New York (Richard J. Arcara, Judge). The District Court dismissed Discon's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Discon argues that the District Court erred in holding that its complaint fails to allege a violation of either Section One or Section Two of the Sherman Act, 15 U.S.C. §§ 1, 2 (1994), or RICO, 18 U.S.C. § 1962 (1994). Because we believe that the District Court prematurely dismissed two of Discon's claims, we affirm in part, reverse in part, and remand.

## Background

Discon is a New York corporation whose primary business is the provision of "removal services" to telephone companies. These removal services include salvaging and disposing of obsolete telephone central office equip-

ment. Discon was first formed in June 1984 to meet a demand created by the court-ordered break-up of the American Telephone and Telegraph Company ("AT&T"), *see generally United States v. American Telephone and Telegraph Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Prior to 1984, AT&T was able to monopolize the market for telecommunications equipment, including the market for removal services, through its ownership of the regional Bell Operating Companies ("BOCs"). AT&T would compel the BOCs to purchase supplies only from AT&T and its manufacturing affiliates, the Western Electric Co. and Bell Telephone Laboratories. In this manner, AT&T was able to extend the regulated monopoly power of its BOCs into other non-regulated markets. 552 F.Supp. at 222–23. Pursuant to the Consent Decree of 1984, AT&T divested itself of control over the BOCs. Thereafter, each BOC was instructed to purchase its products and services from a competitive field of suppliers. *Id.* at 227. Discon became one of those suppliers of removal services in the New York State area.

NYNEX Corp. ("NYNEX") is a successor entity that emerged out of the 1984 divestiture and replaced the BOCs that operated in New York and New England. NYNEX itself is a holding company that controls several wholly-owned subsidiaries, including NYNEX Material Enterprises ("MECo") and two local telephone service providers, New York Telephone Co. ("NYTel") and New England Telephone and Telegraph Co. ("NET").[1] Within the NYNEX structure, MECo is a Delaware corporation whose primary business is the procurement of goods and services for NYNEX and its affiliated corporations, including NYTel. In effect, MECo serves as a purchasing agent for NYNEX and its other subsidiaries. NYTel is a New York corporation that provides local telephone service to most of New York State and some portions of Connecticut. NYTel is the dominant purchaser of removal services in the New York State area. As a regulated

---

1. NET is not named as a defendant in this lawsuit, nor is it otherwise involved in these proceedings.

monopoly under the New York Public Service Laws, NYTel is subject to the state rate-making process. NYNEX and MECo, however, are not subject to state regulation.

AT&T Technologies is a wholly-owned subsidiary of AT&T, and is the successor entity to the Western Electric Co.[2] AT&T Technologies provides numerous network services, including removal services, to telephone companies throughout the United States. Within the New York State area, AT&T Technologies competes directly with Discon in the market for removal services.

Discon's complaint alleges that NYNEX, MECo, and NYTel (collectively, the "NYNEX Defendants") conspired with AT&T Technologies to eliminate Discon from the market for removal services. The crux of this conspiracy was a scheme to defraud the rate-paying public. During the mid–1980s, MECo, as a non-regulated affiliate of NYNEX, would purchase removal services at inflated prices from AT&T Technologies. These removal services, along with their inflated prices, were then passed on to NYTel, a regulated affiliate of NYNEX. In turn, NYTel was able to overcharge its captive rate-paying customers pursuant to the rate-making process. MECo would then recoup its inflated costs by receiving a secret year-end "rebate" from AT&T Technologies. Thus, without being subject to any oversight from the state regulatory commission, MECo and its parent company, NYNEX, were able to generate increased revenues that were essentially derived from NYTel's telephone monopoly. This scheme was replicated in numerous contexts by the NYNEX Defendants for other capital goods and services purchased by NYTel. *See In re New York Telephone Co.*, 5 F.C.C.R. 866 (1990) (*"FCC Order"*).

In an independent regulatory proceeding, the Federal Communications Commission ("FCC") found that this method of generating revenues—using MECo as an "outside" profit center—violated the Communications Act of 1934, 47 U.S.C. § 201(b) (1988). The FCC ordered NYTel to issue a rebate to its rate-paying customers for overcharges that occurred between 1984 and 1988. *FCC Order*, 5 F.C.C.R. 866. The FCC and NYTel subsequently entered into a consent decree. *See In re New York Telephone Co.*, 5 F.C.C.R. 5892 (1990) (*"FCC Consent Decree"*). Without admitting any wrongdoing or violations, NYTel agreed to refund over $35 million for "unreasonable rates reflecting improper capital costs and expense charges." *Id.*

Discon alleges that, as part of this conspiracy to defraud the rate-paying public, NYNEX and MECo, in purchasing removal services for NYTel, discriminated against Discon in favor of AT&T Technologies because Discon refused to inflate its prices. Also, Discon would sometimes contract directly with NYTel, thus bypassing MECo altogether and undermining the basic premise of the outside profit-center scheme. Discon claims that, in retaliation for its non-cooperation, MECo and AT&T Technologies conspired to disseminate false information about Discon, to burden Discon with undue obligations under threat of economic duress, and to give preferential treatment to AT&T Technologies.

Discon filed its original complaint in the Western District of New York in May 1990, alleging that the NYNEX Defendants had violated Section One and Section Two of the Sherman Act and RICO. In June 1992, the District Court granted an initial motion to dismiss with leave to replead. Shortly thereafter, Discon filed an amended complaint, and the NYNEX Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On June 14, 1995, the District Court dismissed with prejudice.

### Discussion

### I. Section One of the Sherman Act

This appeal typifies one of the primary difficulties in the judicial application of antitrust law. Under Section One of the Sherman Act, courts are asked to categorize various complex commercial arrangements into a rigid legal taxonomy, *e.g.*, horizontal restraint, vertical restraint, price-fixing, mar-

---

**2.** Although AT&T Technologies is alleged by Discon to be a co-conspirator with NYNEX, MECo, and NYTel, it is not named as a defendant in this lawsuit.

ket division, concerted refusal to deal, and so on. This initial categorization is often outcome-determinative. Under one category, the arrangement may be *per se* illegal, while under another, it may be found permissible under the rule of reason. Due to the complexity of modern business transactions, however, courts often find that commercial arrangements can be classified theoretically under a number of different categories. *See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 8, 99 S.Ct. 1551, 1556, 60 L.Ed.2d 1 (1979) ("[E]asy labels do not always supply ready answers.") In this case, we believe that the District Court may have been misled by a poorly drafted complaint into categorizing the arrangement as one that is presumptively legal. Since the complaint may properly be understood to allege arrangements that might be shown to be unlawful, we are obliged to reverse in part and remand. We believe that the complaint states a cause of action under Section One of the Sherman Act, though under a different legal theory than the one articulated by Discon.

■ To state a claim under Section One of the Sherman Act, Discon must allege (1) that the NYNEX Defendants entered into a contract, combination, or conspiracy, and (2) that their agreement was in restraint of trade. *See* 15 U.S.C. § 1.[3] Traditionally, restraints of trade are classified as either horizontal restraints or vertical restraints. *See Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730, 108 S.Ct. 1515, 1522–23, 99 L.Ed.2d 808 (1988) (*"Sharp"*). Horizontal restraints are generally considered illegal *per se* if they fall within certain broad categories. *See United States v. Topco Associates, Inc.*, 405 U.S. 596, 608, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972) (market division); *Klor's, Inc. v. Broadway–Hale Stores, Inc.*, 359 U.S. 207, 211–12, 79 S.Ct. 705, 708–09, 3 L.Ed.2d 741 (1959) (con-

certed refusal to deal); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 218, 60 S.Ct. 811, 841–42, 84 L.Ed. 1129 (1940) (horizontal price-fixing). Vertical restraints are illegal *per se* only where the agreement contains a further arrangement to fix prices, *i.e.*, vertical price-fixing. *See Sharp*, 485 U.S. at 724, 108 S.Ct. at 1519–20. Other types of horizontal restraints and vertical non-price restraints are assessed under the rule of reason. *Id.* at 726, 108 S.Ct. at 1520–21.

■ Discon alleges primarily that the NYNEX Defendants engaged in an unlawful horizontal restraint of trade. The complaint asserts that Discon, MECo, and AT&T Technologies were all providers of removal services to NYTel, and that MECo and AT&T Technologies entered into a conspiracy to discriminate against Discon. The complaint thus alleges a classic horizontal restraint of trade—an agreement between two potential rivals seeking to disadvantage a third competitor. *See* E. Thomas Sullivan & Jeffrey L. Harrison, *Understanding Antitrust and Its Economic Implications* § 4.13, at 110 (2d ed. 1994) (hereinafter "Sullivan, *Understanding Antitrust*"). In support of this theory, Discon alleges that MECo is a "supplier" of removal services, along with Discon and AT&T Technologies. The District Court, however, found this to be a mischaracterization. We agree. It is undisputed that MECo itself does not perform any removal services for NYTel. Rather, as the complaint acknowledges, "MECo's primary business function is *procuring* goods and services for New York Telephone [NYTel] ... and for NYNEX Service Company." Thus, MECo acts essentially as a purchasing agent for NYNEX and NYTel, and in fact, it often served as an intermediary between NYTel and its actual suppliers, Discon and AT&T Technologies. *See Westchester Radiological Associates v. Empire Blue Cross and Blue*

---

**3.** The NYNEX Defendants devote a single footnote in their brief to the argument that Discon failed to allege a "conspiracy" in restraint of trade. *See Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 764–67, 104 S.Ct. 1464, 1470–72, 79 L.Ed.2d 775 (1984) (requirement of "concerted action"). Although Discon's complaint is not a model of clarity, it alleges that NYNEX, MECo, and AT&T Technologies con-

spired to defraud the rate-paying public and that this agreement apparently contemplated some form of discrimination against Discon. More specifically, the complaint alleges the existence of various meetings between NYNEX procurement personnel, MECo officers, and agents of AT&T Technologies. These allegations are sufficient to defeat a motion to dismiss.

*Shield, Inc.*, 707 F.Supp. 708, 712–13 (S.D.N.Y.) ("antitrust remedy" does not apply "where a buyer insists on buying his services through an intermediary"), *aff'd on opinion below*, 884 F.2d 707, 708 (2d Cir. 1989), *cert. denied*, 493 U.S. 1095, 110 S.Ct. 1169, 107 L.Ed.2d 1071 (1990).

It is true that, at times, NYTel would contract directly with Discon or other suppliers, and in those situations, presumably MECo would lose the opportunity to derive a commission. Therefore, in one sense, MECo could be considered, if not a supplier, at least a competitor with Discon and AT&T Technologies. Nonetheless, we decline to adopt this line of analysis for two reasons. First, MECo by its very nature transacts business for only one purchaser, NYTel. Unlike other intermediaries, such as wholesalers, who may transfer goods and services to a number of different purchasers, MECo does not resell removal services to any other telephone company.[4] Thus, MECo does not compete in the overall market for removal services, but only in the "market" for a single buyer. Second, the fact that MECo and NYTel are both affiliated under the same corporate structure strengthens the analogy of MECo to that of an internal purchasing agent. If MECo were organized as a purchasing department within NYTel, rather than as a separate corporate entity, it would be undisputed that MECo did not compete with Discon or AT&T Technologies. We believe it would be incongruous to apply a different rule of law simply because MECo holds its own corporate charter. *Cf. Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561–62, 53 L.Ed.2d 568 (1977) (courts in antitrust cases should eschew "formalistic line drawing"). The fact remains that MECo acts at the behest of NYNEX and NYTel, and its actions are guided by a single corporate consciousness. *Cf. Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771, 104 S.Ct. 2731, 2741–42, 81 L.Ed.2d 628 (1984) (parent corporation and wholly-owned subsidiary are "single enterprise" for purpose of conspiracy requirement under Section One). A firm does not become a competitor of one of its suppliers solely by virtue of reselling goods or services to an affiliate under common ownership.

■ Since MECo is not a supplier of removal services and does not otherwise compete with Discon and AT&T Technologies in the overall market, Discon cannot succeed on its theory of a classic horizontal restraint of trade.[5] Nonetheless, we believe that Discon may be able to prevail under a different legal theory. In *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126 (2d Cir.) (*in banc*), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978), we noted that an agreement between two firms (*e.g.*, MECo and AT&T Technologies), even in a vertical relationship, may be characterized as a horizontal restraint of trade if the agreement seeks to disadvantage the direct competitor (*e.g.*, Discon) of one of the conspiring firms. *Id.* at 131–32 & n. 6; *see* Sullivan, *Understanding Antitrust*, *supra*, § 4.13, at 110 (describing different types of concerted refusals to deal); L. Sullivan, *Handbook of the Law of Antitrust* 230–31 & n. 1 (1977) (same). *Oreck* sought to elaborate on the Supreme Court's decision in *Klor's*, 359 U.S. at 211–12, 79 S.Ct. at 708–09, where the Court held that a retailer may not induce its manufacturers to refrain from sell-

---

**4.** Discon's complaint reveals at least one other telephone company, AT&T Communications, that purchases removal services in the New York State area.

**5.** Discon also argues that the agreement between MECo and AT&T Technologies could be characterized as a vertical agreement to fix prices. *See Sharp*, 485 U.S. at 724–26, 108 S.Ct. at 1519–21; *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). We believe, however, that Discon has not stated a cause of action under a theory of vertical price-fixing. Discon admits that its allegations merely raise the "inference" that AT&T Technologies and MECo "intended" to influence the prices that MECo charged to NYTel. Yet this inference arises whenever a supplier sells its products to a purchasing agent. The price agreed upon between the supplier and the purchasing agent will by definition exert some influence upon the final price that the purchasing agent passes on to its client. Discon does not allege that MECo was in any way restricted in its freedom to set whatever prices it charged to NYTel. Therefore, the arrangement between MECo and AT&T Technologies cannot be characterized as one to "fix" prices. *See Sharp*, 485 U.S. at 731, 108 S.Ct. at 1523 (vertical price-fixing conspiracy must contain "some agreement on price or price levels").

ing to a competing retailer. In *Klor's*, the agreements between the defendant-retailer and its manufacturers were essentially vertical in nature. Yet the Supreme Court applied a "group boycott" theory because it found that the intent and effect of these vertical agreements was a horizontal market impact. *Id.*

It is true that *Klor's* is not directly on point, because in that case numerous manufacturers participated in a group boycott, whereas here the complaint alleges only a single boycotting firm, MECo, and a single competitor, AT&T Technologies. Nonetheless, *Klor's* has been extended in the Sixth and Ninth Circuits to the situation where only a single retailer and a single manufacturer conspire. *See Com–Tel, Inc. v. Du-Kane Corp.*, 669 F.2d 404, 411–13 & nn. 13, 16 (6th Cir.1982); *Cascade Cabinet Co. v. Western Cabinet & Millwork Inc.*, 710 F.2d 1366, 1370–71 (9th Cir.1983); *see also Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164, 168 (3d Cir.1979). The Eleventh Circuit, on the other hand, has expressly declined to extend *Klor's* in such a manner. *See Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 776–78 (11th Cir.1983); *see also Westman Commission Co. v. Hobart International, Inc.*, 796 F.2d 1216, 1224 n. 1 (10th Cir.1986), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 192 (1988).

We can understand why some courts are reluctant to extend *Klor's* to two-firm group boycotts, since such arrangements will often resemble exclusive distributorship agreements, which are generally considered permissible under the rule of reason. *See Oreck*, 579 F.2d at 131. We emphasize that our decision should not be read to conflict with the holding in *Oreck* that, *in general*, two-firm vertical combinations will be scrutinized as exclusive distributorship controversies, rather than as group boycotts. *Id.; see also Sharp*, 485 U.S. at 725–31 & n. 4, 108 S.Ct. at 1520–23 & n. 4 (two-firm group boycott should be judged under rule of rea-

son); *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61 F.3d 123, 127 (2d Cir.1995) (decision to use one distributor over another does not violate Section One). Yet *Oreck* cautioned that it may not always be true that two-firm group boycotts are permissible; rather, "a careful scrutiny into the business justifications for the agreement is required." 579 F.2d at 132 n. 6.

In the vast majority of cases, the decision to discriminate in favor of one supplier over another will have a pro-competitive intent and effect. *Cf. Sharp*, 485 U.S. at 724–25, 108 S.Ct. at 1519–20. Presumably, the purchaser will have chosen a particular supplier because that firm provides certain efficiencies that allow the purchaser to compete more effectively in the market for sales to the ultimate consumer. In this case, however, no such pro-competitive rationale appears on the face of the complaint. Discon alleges that the intent and effect of choosing AT&T Technologies over Discon was entirely anticompetitive. Although the NYNEX Defendants may be able to present some pro-competitive justification for choosing a more costly supplier in order to overcharge captive rate-paying customers, this justification, if it exists, remains unproven. We conclude that Discon has alleged a cause of action under, at least, the rule of reason, and possibly under the *per se* rule applied to group boycotts in *Klor's*, if the restraint of trade " 'has no purpose except stifling competition.' " *Oreck*, 579 F.2d at 131 (quoting *White Motor Co. v. United States*, 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963)).[6]

## II. Section Two of the Sherman Act

Discon also alleges that the NYNEX Defendants violated Section Two of the Sherman Act by engaging in monopolization, attempted monopolization, and conspiracy to monopolize. *See* 15 U.S.C. § 2. We consider each of these claims separately.

### A. Monopolization

To state a claim for monopolization, Discon must allege, among other things, that

---

6. We do not decide at this point whether the District Court on remand should apply a *per se* rule; however, we note that the traditional rationale for applying the rule of reason to two-firm

group boycotts—the promotion of interbrand competition over intrabrand competition—does not exist in this case. *Cf. Sharp*, 485 U.S. at 724–25, 108 S.Ct. at 1519–20; *Oreck*, 579 F.2d at 131.

the defendants possess monopoly power in a relevant market. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). In this case, however, none of the NYNEX Defendants competes in the relevant market for removal services. NYNEX and NYTel are purchasers, not suppliers, of removal services, and MECo, as we have noted, is only a purchasing agent for NYTel and cannot be considered a competitor in the overall market.[7] Thus, Discon's claim of monopolization must fail, since it is axiomatic that a firm cannot monopolize a market in which it does not compete. *See Official Airline Guides, Inc. v. FTC*, 630 F.2d 920, 925–27 (2d Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981); *FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1030 (2d Cir.1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

### B. Attempted Monopolization

 Discon's claim of attempted monopolization fails for the same reason. To state a cause of action for attempted monopolization, Discon must allege, among other things, that there is a "dangerous probability" that the attempt will succeed. *See International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 790 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). In this case, there was no "dangerous probability" that the NYNEX Defendants would succeed in monopolizing the market for removal services, since they do not even compete in that market and there is no indication that they ever sought to do so. *See FLM Collision Parts*, 543 F.2d at 1030.

### C. Conspiracy to Monopolize

 To state a claim for conspiracy to monopolize, Discon must allege that there was (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize. *See International Distribution Centers*, 812 F.2d at 795. Unlike the previous two Section Two claims, to be liable for conspiracy to monopolize, it is not necessary that the NYNEX Defendants

compete directly in the market for removal services. A defendant may be liable for conspiracy to monopolize where it agrees with another firm to assist that firm in its attempt to monopolize the relevant market. We conclude that the complaint sufficiently alleges that the NYNEX Defendants conspired with AT&T Technologies and performed overt acts intending to assist AT&T Technologies in its monopolization of the market for removal services. The requirement of pleading specific intent is met insofar as Discon alleges that MECo sought the dominance of AT&T Technologies in order to ensure the suppression of other suppliers who would bypass MECo and deal with NYTel directly. Therefore, since Discon has alleged the essential elements of a conspiracy to monopolize, the District Court should not have dismissed this claim.

### III. Civil RICO

Finally, Discon alleges several violations of RICO, 18 U.S.C. § 1962. Discon alleges that the NYNEX Defendants violated subsections 1962(b), (c), and (d). All three of these claims were properly dismissed by the District Court.

### A. Subsection 1962(b)—RICO acquisition

 Discon first alleges a violation of subsection 1962(b), which prohibits the "acquisition or maintenance" of an enterprise through a pattern of racketeering activity. Defining the relevant "enterprise" as NYTel, Discon claims that NYNEX and MECo controlled NYTel through a number of illegal predicate acts. It is undisputed, however, that NYNEX acquired legal control over NYTel during the 1984 divestiture. Discon does not allege any facts to support a finding that this control, which exists by virtue of stock ownership in a wholly-owned subsidiary, was "acquired" or "maintained" through a pattern of racketeering activity.

Moreover, Discon has not alleged the sort of "acquisition injury" necessary to state a claim under subsection 1962(b). We have held, in the context of subsection 1962(a),

---

7. The only conspiring firm that competes in the market for removal services is AT&T Technolo-

gies; however, it is not named as a defendant in this lawsuit.

prohibiting the "use or investment of income" derived from a pattern of racketeering activity, that "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990). In the context of subsection 1962(a), therefore, we have required that the plaintiff allege a "use or investment injury" that is distinct from the injuries resulting from predicate acts.

Similarly, other circuits have held that, in order to state a cause of action under subsection 1962(b), "plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation." *Danielsen v. Burnside–Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1231 (D.C.Cir.1991); *accord Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp.,* 57 F.3d 56, 92 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 490 (1995); *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993); *Old Time Enterprises, Inc. v. International Coffee Corp.,* 862 F.2d 1213, 1219 (5th Cir. 1989). In this case, Discon has not alleged any injury stemming from the "acquisition or maintenance" of NYTel by NYNEX and MECo, only injuries resulting from the commission of predicate acts. Without a distinct "acquisition injury," Discon cannot state a cause of action under subsection 1962(b).

### B. Subsection 1962(c)—RICO conduct

■ Discon also alleges a violation of subsection 1962(c), which prohibits "any person employed by or associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).[8] For this claim, Discon redefines the enterprise as the "NYNEX Group," which consists of the three corporations, NYNEX, MECo, and NYTel. Discon claims that these three corporate "persons" conducted the affairs of the NYNEX Group "enterprise" through a number of illegal predicate acts.

We have previously held, however, that subsection 1962(c) "clearly envisions" that the "person" and the "enterprise" will be distinct. *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). "[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Id.* In *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339 (2d Cir.1994), we explained further that the distinctiveness requirement of *Bennett* may not be circumvented "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant...." *Id.* at 344. "Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* Thus, in *Riverwoods,* we found that the activities of two loan officers "acting within the scope of their authority" could not subject them to RICO liability for conducting the affairs of the alleged enterprise-bank.

In response, Discon cites *Cullen v. Margiotta,* 811 F.2d 698 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), for the proposition that a defendant may simultaneously be a RICO "person" and one of a number of members in the RICO "enterprise." *Id.* at 729–30. In *Cullen,* the enterprise was defined as an association of three separate entities—a municipality, the town Republican Committee, and the county Republican Committee. *Id.* at 728. We held that any of the three individual entities could be convicted under subsection 1962(c) for its participation in the tripartite enterprise.

The difference between *Riverwoods* and *Cullen* appears to lie in the fact that *Riverwoods* involved only a single corporate entity that was associated with its employees, whereas *Cullen* involved three legally sepa-

---

**8.** Unlike subsections 1962(a) and (b), under subsection 1962(c), a plaintiff need not allege a distinct "racketeering injury" in order to state

cause of action. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 494–95, 105 S.Ct. 3275, 3283–84, 87 L.Ed.2d 346 (1985).

rate entities that could be differentiated from the enterprise-group. Moreover, in *Riverwoods,* the individual defendants were acting on behalf of the enterprise-corporation, and therefore, it would have been especially inappropriate to hold that they were "distinct" from the enterprise.

In this case, we confront a situation that lies somewhere between *Riverwoods* and *Cullen.* Like the defendants in *Riverwoods,* NYNEX, MECo and NYTel operate within a unified corporate structure. At the same time, however, they are also legally separate entities from each other and from the NYNEX Group. Although our decision is by no means dictated by clear precedent, we believe that *Riverwoods* presents the more analogous situation. The relationship between NYNEX, MECo, and NYTel in comparison to the NYNEX Group is not substantially different from that between the loan officers in *Riverwoods* in comparison to the bank. In both cases, the individual defendants were acting within the scope of a single corporate structure, guided by a single corporate consciousness. It would be inconsistent for a RICO person, acting within the scope of its authority, to be subject to liability simply because it is separately incorporated, whereas otherwise it would not be held liable under *Riverwoods. But see Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384, 402 (7th Cir.1984) (wholly-owned subsidiary is technically distinct from parent corporation and may be liable under RICO), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

Discon's reference to unnamed "attorneys, accountants and other agents" as part of the enterprise does not alter this analysis. *Riverwoods* expressly applies to "agents" as well as "employees" so long as those persons act on behalf of the corporation. Although the situation might be different if the defendants were acting outside the scope of their agency, this situation is not presented here.

C. Section 1962(d)—RICO conspiracy

■ Lastly, Discon alleges a violation of subsection 1962(d), which prohibits any conspiracy to commit a RICO violation. Discon's complaint incorporates its prior two claims by reference and simply adds the further allegation that the NYNEX Defendants "consciously agreed to join and to enter a conspiracy" to commit these substantive acts. Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations. *See Lightning Lube,* 4 F.3d at 1191 ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Danielsen,* 941 F.2d at 1232.

### Conclusion

We affirm the judgment of the District Court insofar as it dismissed Discon's claims for vertical price-fixing under Section One of the Sherman Act, for monopolization and attempted monopolization under Section Two of Sherman Act, and for RICO acquisition, RICO conduct, and RICO conspiracy under RICO. We reverse the judgment of the District Court and remand for further proceedings with regard to Discon's claims of an unlawful two-firm group boycott under Section One of the Sherman Act, and a conspiracy to monopolize under Section Two of the Sherman Act.