**BRESLIN REALTY DEVELOPMENT CORP., Plaintiff,**

v.

Martin **SCHACKNER**, and Ilana Yeroushalmi a/k/a/ Nazila Yeroushalmi, and John Doe # 1 through John Doe # 5, the true identity of such defendants being unknown, the parties intended being persons and/or entities who participated with the other named defendants in the commission of the fraudulent and unlawful acts alleged to have been committed herein, Defendants

No. CV 05–1070.

United States District Court, E.D. New York.

Oct. 24, 2005.

Dollinger, Gonski & Grossman by Matthew Dollinger, Carle Place, for Plaintiff.

Siller Wilk, LLP by Eric J. Snyder, New York, for Defendant Martin Schackner.

---

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action setting forth state law claims for breach of contract and fraud as well as federal claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"). The factual allegations underlying all claims are the same. Essentially, defendants, former employees of Plaintiff, are alleged to have participated in a scheme pursuant to which they bilked Plaintiff of hundreds of thousands of dollars. The RICO claims are the sole basis for federal jurisdiction.

Presently before the court is the motion of defendant Martin Schackner, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the RICO claims for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

#### I. Factual Background

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court will outline here those facts relevant to the motion that are not in dispute and in the light most favorable to Plaintiff, the non-moving party.

##### A. The Parties and their Business Relationship

Plaintiff is Breslin Realty Development Corp. ("BRDC"), a company that is engaged in the purchase, sale, leasing, management and development of real property for both commercial and residential use. Wilbur F. Breslin is the president and sole shareholder of BRDC.

Prior to his termination in 2004, Defendant Martin Schackner ("Schackner") was employed as the Chief Financial Officer ("CFO") of BRDC. Prior to being promoted to the CFO position, Schackner worked in various financial positions for BRDC, beginning in 1988. In his capacity as BRDC's CFO, Schackner is alleged to have been responsible for overseeing the financial affairs of BRDC as well as those of certain entities owned by Wilbur Breslin and his family. In particular, Schackner is alleged to have been responsible for supervising, inter alia: (1) the receipt of all funds due and payable to BRDC; (2) the payment of all employee salaries and benefits; (3) the transfer of funds by and among BRDC, and (4) the receipt and

payment of vendor invoices. Schackner is also alleged to have been responsible for overseeing the accounting department of BRDC. It is alleged specifically that, with the exception of two enumerated accounts, Schackner was not an authorized signatory on any checking account maintained in the names of either BRDC, Wilbur Breslin or any entity in which Wilbur Breslin or his family had any interest.

Defendant Ilana Yeroushalmi ("Yeroushalmi"), is alleged to have been employed by BRDC beginning in 1994. Like Schackner, Yeroushalmi was terminated in 2004. At the time of her termination, Yeroushalmi was employed as BRDC's Assistant Comptroller. In this capacity, Yeroushalmi is alleged to have been responsible for overseeing BRDC's cash and payroll functions, under the supervision of Schackner.

In addition to Schackner and Yeroushalmi, the complaint names "Mary Roe," as a non-party defendant. Mary Roe is alleged to have begun her employment with BRDC in 1990 as the Assistant Comptroller of the BRDC accounting department. In this capacity, as set forth in the complaint, Mary Roe is alleged to have been required to "participate in the conduct of all of the financial affairs of BRDC as was required to be performed by its Accounting Department." Finally, the complaint names several "John Doe" defendants whose true identities are unknown, but who are alleged to have been involved in the commission of the unlawful acts set forth in the complaint.

The complaint alleges that Schackner, Yeroushalmi and Roe ("collectively" "Defendants") were employed by BRDC to provide services in a manner consistent with BRDC policies and were afforded salary and benefits (including stated vacation periods) according to clearly established company policy. BRDC's payroll was ad-

ministered by Automatic Data Processing, an employer payroll servicing company ("ADP"). BRDC maintained a separate payroll account upon which ADP would draw to prepare company payroll checks. While Defendants' job responsibilities included the transfer of funds from BRDC accounts to this payroll account, none of the Defendants were signatories to the payroll account.

In or about 1999, BRDC instituted a 401(k) retirement plan for the benefit of its employees. Pursuant to that plan, BRDC contributed matching funds for the benefit of employees. According to the complaint, Schackner is alleged to have served as a trustee for the plan. As part of their responsibilities, Defendants were required to provide accurate retirement plan information to appropriate entities.

### B. *Factual Allegations of Malfeasance*

As noted, the complaint alleges that Defendants had the responsibility of transferring BRDC funds into payroll accounts administered by ADP. Defendants are also alleged to have been responsible for providing BRDC 401(k) retirement plan information to appropriate entities. Defendants are alleged to have abused these responsibilities by making numerous unauthorized transfers and payments to themselves.

The complaint details unlawful payments starting in 1996 and continuing through 2004. Unauthorized payments are alleged to have been made by Schackner, for his own benefit, beginning in 1996 and continuing every year until his termination in 2004. Unauthorized payments are alleged to have been made by Schackner for the benefit of Mary Roe for a four year period beginning in 1997 and lasting until her voluntary termination from BRDC in 2001. Yeroushalmi is alleged to have been the beneficiary of unlawful payments author-

ized by Schackner for a five year period extending from 1999 until the termination of her employment with BRDC in 2004. The fraudulent payments alleged to have been caused by either Schackner or "defendants" were in the form of unauthorized vacation pay, bonuses and excessive contributions to retirement accounts. Additionally, Schackner is alleged to have signed unauthorized manual payroll checks payable to himself. Payments detailed in the complaint are alleged to have been made by the regular wiring of funds into the BRDC payroll account.

## II. *Legal Allegations in the Complaint*

Relying on the allegations set forth above, Plaintiff alleges state law claims for breach of contract, an equitable claim for an accounting, fraud and unjust enrichment. Plaintiff's federal claims are set forth in the eighth cause of action and are alleged pursuant to RICO, 18 U.S.C. §§ 1962(b)(c) and (d).

In support of the RICO claims, Plaintiff alleges that defendants "engaged in a pattern of wrongful conduct involving mail fraud and wire fraud by unlawfully converting sums of money belonging to BRDC in violation of law and by intentionally secreting, fictionalizing and falsifying business records so as to conceal the unlawful and criminal conduct committed by each of them, both in violation of Federal and State Statutes and in violation of their contractual and/or fiduciary obligations to BRDC."

As to specific predicate acts, Plaintiff alleges that defendants acted in violation of the federal mail fraud statute, 18 U.S.C. § 1341, by mailing fraudulent and unauthorized checks and purchase orders to ADP and various vendors. Wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, is alleged in the form of the unauthorized wire transfer of funds in furtherance of the alleged RICO scheme.

Plaintiff alleges a pattern of racketeering activity on the basis of "numerous acts" of racketeering undertaken pursuant to a scheme that is alleged to have lasted for a period of ten years. Such acts are alleged to have been related in that "they involved the same or similar purposes, results, participants, victims and methods of commission and did not involved isolated or sporadic events." Plaintiff further alleges that these acts "extended over a regular ongoing and considerable period of time and involved the threat of continuing wrongful activities and conduct."

As to a RICO's "enterprise," Plaintiff alleges that Schackner, Mary Roe and Yeroushalmi, along with unnamed "Doe" defendants, participated in an "associational enterprise-in-fact affecting interstate commerce." This enterprise is alleged to have been devoted to the commission of acts of larceny and to have been formed for the purpose of carrying out the activities alleged in the complaint. The enterprise is further alleged to be an "on-going organization" that "functions as a continuing unit," the purpose of which is to "accomplish the theft of huge sums of money from the plaintiff for the benefit of defendants."

Finally, RICO "acquisition injury" is sought to be alleged in that Plaintiff states that while the fraudulent conduct was aimed primarily at Plaintiff, there were other victims. These victims are alleged to have been injured "in their business or property by reason of a violation" of RICO "by the fact that the plaintiff has been deprived of huge sums of money that have been secreted, stolen and otherwise taken from plaintiff in violation of both Federal and State Statutes."

### III. The Motion to Dismiss

Schackner moves to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The 9(b) motion alleges failure to specifically plead the predicate acts of mail or wire fraud. The 12(b)(6) motion seeks dismissal of the RICO claims on the grounds that Plaintiff's complaint fails to properly allege: (1) RICO injury; (2) the existence of a RICO enterprise and Schackner's management of that enterprise, or (3) a pattern of racketeering activity.

After outlining the applicable law, the court will consider the merits of the motion.

### DISCUSSION

### I. Legal Principles

#### A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weixel v. Board of Educ. of New York*, 287 F.3d 138, 145 (2d Cir.2002). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (E.D.N.Y.2000).

#### B. Standards Pursuant to Rule 9(b)

■ Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. The reason for these requirements are: (1) to provide the defendant with fair notice of the claims asserted; (2) to protect the defendant from harm to reputation or goodwill as a result of unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *see Wood v. Village of Patchogue*, 311 F.Supp.2d 344, 351 (E.D.N.Y.2004).

■ To satisfy the pleading requirements of Rule 9(b), the plaintiff must plead the circumstances of the fraud with particularity and that the defendant acted with fraudulent intent. Fed.R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)(quoting, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

■ Where plaintiff claims that mail and wire fraud took place in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *AIU Ins. Co. v. Olmecs Medical Supply, Inc.*, 2004 WL 3270060 *11 (E.D.N.Y.2004); *Wood*, 311 F.Supp.2d at 352; *Calabrese v. CSC Holdings, Inc.*, 283 F.Supp.2d 797, 808 (E.D.N.Y.2003). Rule 9(b) is satisfied so long as the mailings and wire transfers alleged "further an underlying scheme that itself has a fraudulent, deceptive purpose." *Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799 at *5 (S.D.N.Y.

2003), *report and recommendation adopted,* 2004 WL 48877 (S.D.N.Y.2004).

In cases involving multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud. *See DiVittorio,* 822 F.2d at 1247. However, "it is not necessary to allege . . . that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Jerome M. Sobel,* 2003 WL 22839799 at *6. The fact that a third party may have caused the use of the mails does not render the pleading defective, so long as "the defendants could reasonably have foreseen that the third-party would use the mails in the ordinary course of business as a result of defendants' act." *Id.* (quoting, *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989)).

## C. *Stating a RICO Claim*

### 1. *18 U.S.C. § 1962(b)*

18 U.S.C. § 1962(b) ("Section 1962(b)") makes it unlawful for any person "through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or. the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). The purpose of Section 1962(b) is "to prohibit the takeover of a legitimate business" through racketeering. *Wood,* 311 F.Supp.2d at 355; *Stolow v. Greg Manning Auctions, Inc.,* 258 F.Supp.2d 236, 245–46 (S.D.N.Y.2003). Standing to redress a violation of Section 1962(b) exists only where plaintiff can show injury stemming from the acquisition or maintenance of any interest in, or control of, an enterprise. Such an injury must be separate and distinct from injuries stemming from the predicate acts alleged. *Discon, Inc.v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir.1996), *vacated on other grounds,* 525

U.S. 128, 140, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Wood,* 311 F.Supp.2d at 355; *Stolow,* 258 F.Supp.2d at 246. Failure to allege a distinct acquisition injury requires dismissal of a claim pursuant to Section 1962(b). *E.g., Wood,* 311 F.Supp.2d at 355; *United States Fire Ins. Co. v. United Limousine Serv., Inc.* 2004 WL 324477 at *12 (S.D.N.Y.2004).

### 2. *18 U.S.C. § 1962(c)*

18 U.S.C. § 1962(c) ("Section 1962(c)") makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). To establish a RICO claim pursuant to Section 1962(c), plaintiff must prove "(1) a violation of the RICO statute . . . (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 107 (2d Cir.2001); *New York Transportation, Inc. v. Naples Transportation, Inc.,* 116 F.Supp.2d 382, 387 (E.D.N.Y.2000). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas,* 244 F.3d 286 306 (2d Cir.2001) (quoting, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Unlike Section 1962(b), an action pursuant to Section 1962(c) need not allege a separate "acquisition" injury. *Discon,* 93 F.3d at 1063 n. 8.

### 3. *18 U.S.C. § 1962(d)*

18 U.S.C. § 1962(d) ("Section 1962(d)") makes it "unlawful for any person to conspire to violate any of the provisions of

subsections (a), (b), or (c) of the RICO statute."

### 4. Enterprise

 A RICO "enterprise," required to be shown pursuant to claims under either Sections 1962(b) or 1962(c), is broadly defined in the statute and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *see United States v. Morales*, 185 F.3d 74, 80 (2d Cir.1999); *AIU Ins. Co.*, 2004 WL 3270060 at *6. Defendants stated to be members of the enterprise must be alleged to engage in "a particular fraudulent course of conduct and work together to achieve" their goal. *AIU Ins. Co.*, 2004 WL 3270060 at *6.

 Plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. *AIU Ins. Co.*, 2004 WL 3270060 at *8. This requires a showing that each had "some part" in "directing the affairs of the enterprise." *Id.* While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. *DeFalco*, 244 F.3d at 309.

 The Second Circuit has construed the enterprise element liberally and has held that an enterprise is properly pled even if the pleading reveals that the group exists solely for the commission of the fraudulent acts alleged in the complaint.

*Pavlov v. Bank of New York, Co., Inc.*, 25 Fed.Appx. 70(2d Cir.2002); *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.1983); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir.1983); *RD Mgmt. Corp. v. Samuels*, 2003 WL 21254076 at *7 (S.D.N.Y. 2003). Although the RICO enterprise element must be proven separately from the pattern of racketeering activity, there will often be overlap between the proof offered to show the existence of each of these elements. *Mazzei*, 700 F.2d at 89.

### 5. Pattern of Racketeering Activity

 A "pattern of racketeering activity," requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period. *See* 18 U.S.C. § 1961(5); *New York Transportation*, 116 F.Supp.2d at 387; *Oak Beverages, Inc. v. Tomra of Massachusetts, LLC*, 96 F.Supp.2d 336, 346 (S.D.N.Y. 2000). Predicate acts of racketeering activity include a variety of federal and state criminal offenses including the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1); *see* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). While federal mail and wire fraud constitute RICO predicate acts, common law fraud under state law does not constitute such an act. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999).

 A RICO pattern is established by showing that the predicate acts relied upon are "related, *and* that they amount to or pose a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 242 (quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original)). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolat-

ed or sporadic." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995). The element of continuity may be satisfied by a showing of either "open ended continuity" or "closed ended continuity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241–42; 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Cofacredit*, 187 F.3d at 242.

### i. *Open Ended Continuity*

 To establish open ended continuity, it need not be shown that predicate acts were engaged in over an extended period of time. Instead, plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. This threat of continuing criminal activity must extend "beyond the period during which the predicate acts were performed." *DeFalco*, 244 F.3d at 323 (quoting, *Cofacredit*, 187 F.3d at 242). The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. *See Cofacredit*, 187 F.3d at 242. If the enterprise alleged is engaged in "inherently unlawful" acts, there is a threat of continuing criminal activity and open ended continuity exists. *Id.*

 On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity. *Id.; see also GICC Capital Corp.*, 67 F.3d at 466; *Allen v. New World Coffee, Inc.*, 2001 WL 293683 at *6 (S.D.N.Y.2001); *Jordan(Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.*, 154 F.Supp.2d 682, 694–95 (S.D.N.Y.2001).

### ii. *Closed Ended Continuity*

 A RICO plaintiff may also satisfy the continuity element by a showing of "closed ended" continuity. Closed ended continuity is shown by proving "a series of related predicate acts extending over a substantial period of time." *Cofacredit*, 187 F.3d at 242. When calculating the relevant time period, the court considers only the time during which defendants committed the predicate acts alleged. *DeFalco*, 244 F.3d at 321. Actions that do not constitute predicate acts are not considered when calculating the relevant time period. *GICC Capital Corp.*, 67 F.3d at 468.

 The Second Circuit has recently noted that it has never held a period of less than two years of activity sufficient to satisfy the closed ended continuity requirement. *See DeFalco*, 244 F.3d at 321. While closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the "number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes" as relevant when determining whether closed ended continuity exists. *DeFalco*, 244 F.3d at 321; *New York Transportation*, 116 F.Supp.2d at 388.

## II. *Disposition of the Substantive RICO Counts*

### A. *Rule 9(b)*

 Schackner seeks dismissal of the RICO claims on the ground that Plaintiff fails to allege the predicate acts of mail and wire fraud with the required specificity. While Schackner is correct in pointing out the requirement that such claims be alleged in accordance with the specificity requirements of Rule 9(b), he is incorrect in his assessment of the allegations of the complaint.

As noted above, where, as here, the predicate acts alleged are violations of the mail and wire fraud statutes, the pleader need only allege that the "mail and wire fraud were in furtherance of a larger scheme to defraud," and "the communications themselves need not have contained false or misleading information." *Calabrese*, 283 F.Supp.2d at 808; *see also In re Sumitomo Copper Litig.*, 995 F.Supp. 451, 456 (S.D.N.Y.1998). Further, where there are multiple defendants, "it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Jerome M. Sobel*, 2003 WL 22839799 at *6.

Plaintiff here alleges the larger scheme of defrauding BRDC of substantial amounts of money by the fraudulent and unauthorized transfer of company funds at the direction of defendants. The particular amounts alleged, the years in which the transfers took place, and on behalf of which particular defendant are each alleged. Under these circumstances, the court holds that Rule 9(b) is satisfied and declines to dismiss the complaint pursuant to that rule.

### B. *Rule 12(b)(6)*

Schackner's Rule 12(b)(6) motion seeks dismissal of the Section 1962(b) claim on the ground that it fails to allege the necessary acquisition injury. That claim, and the Section 1962(c) claim, are sought to be dismissed for failing to properly allege enterprise and/or a pattern of racketeering activity. Each ground for dismissal is addressed below.

### 1. *Section 1962(b): Acquisition Injury*

■ As noted, a claim pursuant to Section 1962(b) requires a pleading of a separate acquisition injury. *Wood*, 311 F.Supp.2d at 355. This requirement, which furthers the statutory purpose of prohibiting the takeover of legitimate businesses through acts of racketeering, is satisfied where plaintiff alleges injury that is separate and distinct from injury caused by the predicate acts alone. *Discon*, 93 F.3d at 1062–63.

Here, the only injury alleged is the loss of BRDC's money caused by defendants' illegal transfer of funds. The factual allegations of the complaint do not, as required, seek to redress "the takeover of a legitimate business" through acts of racketeering. *See Wood*, 311 F.Supp.2d at 355. Although Plaintiff's complaint parrots the RICO statute and states that "other" victims were "injured in their business or property by reason of a violation of RICO," there is no real attempt to suggest any injury other than that suffered as a result of the predicate acts themselves. Under these circumstances, Plaintiff fails to allege RICO injury pursuant to Section 1962(b) and that claim is therefore dismissed.

### 2. *Section 1962(c) Claim*

### i. *Enterprise*

■ While Section 1962(c) does not require an allegation of "racketeering" injury, it does require a showing of a RICO enterprise. The enterprise alleged by Plaintiff is the statutory "group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). The group consists of Schackner, Mary Roe, Yeroushalmi and other "John Doe" defendants. This enterprise is alleged to have existed for the purpose of committing acts of larceny and to have been formed for the purpose of carrying out the activities alleged in the complaint. The enterprise is stated to be an "on-going" organization that "functions as a continuing unit," with the purpose of accomplishing "the theft of

huge sums of money from the plaintiff for the benefit of defendants."

Given the liberal pleading standard in this circuit, as detailed above, the court concludes that Plaintiff has adequately alleged, at least at this early stage, an association in fact, existing (at least) of Schackner, Mary Roe and Yeroushalmi. Plaintiff points to a scheme whereby BRDC funds were wrongly diverted as vacation pay and into the retirement accounts of the members of the enterprise. It is also alleged that each defendant participated in the conduct and control of the enterprise.

While it is concluded that enterprise has been adequately alleged, the court points to two important reasons why the enterprise question is close. First, the complaint refers clearly only to the activities of Schackner as the diverter of the funds. As to Yeroushalmi, she is included among those who illegally diverted funds only to the extent that the complaint refers to the conduct of "defendants." The enterprise allegation is also weak in describing the roles of each defendant (including Yeroushalmi and the various "Does") in conducting the affairs of the alleged enterprise. As noted, each defendant must be shown in some way, to have been an active participant in the conduct of the affairs of the enterprise.

 Despite these weaknesses, the liberal pleading requirements set forth by the Second Circuit constrain the court to hold that enterprise is alleged sufficiently to survive this motion to dismiss. This result is also compelled by the fact that when pleading the enterprise element, a plaintiff need comply only with the notice pleading set forth in Rule 8 of the Federal Rules of Civil Procedure. *See AIU Insurance*, 2004 WL 3270060 at * 6; *RD Mgmt. Corp.*, 2003 WL 21254076 at * 5. The allegations of the complaint meet this standard. In particular, the court notes the

factual pleading of Yeroushalmi's receipt of vacation and retirement funds (including specific amounts and dates). The court further notes the allegation, albeit conclusory, that each defendant had a hand in the conduct and control of the enterprise. This is not to say that these allegations, standing alone, will support the finding of an enterprise, and the requisite involvement of each defendant, at a later stage of the proceedings. The court holds only that the enterprise element has been alleged sufficiently to survive this motion to dismiss.

ii. *Pattern of Racketeering Activity*

A "pattern of racketeering activity," requires a showing of at least two related predicate acts that were "neither isolated or sporadic" are therefore amount to or pose a threat of continued criminal activity. *Cofacredit*, 187 F.3d at 242. As noted, pleading this element is satisfied by a showing of either "closed ended continuity" or "open-ended continuity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. 2893; *Cofacredit*, 187 F.3d at 242.

To satisfy the continuity requirement, Plaintiff alleges that the predicate acts continued over a period of nearly ten years. While Schackner is alleged to have been involved in the scheme for nearly this period of time (between 1996 and 2004), this cannot be said for the other alleged members. As set forth in the complaint, Schackner acted alone in 1996. In 1997, he is alleged to have been joined by Mary Roe. Schackner and Mary Roe are alleged to have taken part in the scheme from 1997 through 2001—a period of five years. Yeroushalmi is alleged to have been a member of the enterprise beginning in 1999 and continuing through her dismissal from BRDC in 2004. From 1999 through 2001, Yeroushalmi is alleged to have participated in the scheme with Schackner

and Mary Roe. Yeroushalmi and Schackner are alleged to have continued the scheme until 2004. Thus, Yeroushalmi's involvement in the scheme (either with or without Mary Roe) consisted of a period of at least five years. It is against this factual backdrop that the court turns to consider whether Plaintiff has alleged adequately either open or closed ended continuity.

The court agrees with Schackner that Plaintiff has failed to allege open-ended continuity. The scheme set forth in the complaint came to an abrupt halt upon the firing of both Schackner and Yeroushalmi in 2004. Because this scheme was one to defraud BRDC, and did not amount to the way in which the company conducted its business, there was, as of the time of the firings and continuing to date, no continuing threat of criminal activity and therefore no open-ended continuity.

As to closed ended continuity, the court considers first the temporal nature of the acts. The Second Circuit has noted that a period of at least two years of criminal activity is necessary to support an allegation of closed-ended continuity. *DeFalco,* 244 F.3d at 320. While the time period element is the most important factor to consider in the closed-ended continuity question, the court also considers, as noted, "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes ...." *Id.* at 321.

Here, Plaintiff's complaint alleges a period of time sufficient to support a claim of closed-ended continuity. While the ten year period involvement of Schackner does not apply to all defendants, there is alleged a five year period during which other defendants are alleged to have been continually involved in the commission of predicate acts. This period of time is more than sufficient to satisfy the temporal element of closed ended continuity. *Accord*

*Annodeus, Inc. v. Ciarkowski,* 2004 WL 2066937 at * 4 (S.D.N.Y.2004) (scheme alleged to have lasted for two and one-half years sufficient to show closed ended continuity). Separate schemes are alleged in the form of unauthorized transfers to ADP regarding bonus and vacation pay and the fraudulent transmission of retirement account information. This is not a situation where Plaintiff is "artificially fragmenting a singular act into multiple acts simply to invoke RICO." *First Capital Asset Mgmt., Inc. v. Satinwood,* 385 F.3d 159, 181 (2d.Cir.2004).

Similar to this court's holding with respect to proof of the enterprise element, ultimate proof of a RICO pattern will require discovery. In the final analysis, Plaintiff will be required to come forward with evidence to determine the nature of the acts alleged and to prove the actual involvement of each defendant. The court holds, however, that the complaint may not be dismissed, at this time, for failure to properly plead a pattern of racketeering activity.

### 3. *Section 1962(d)*

To state a Section 1962(d) RICO conspiracy claim, a plaintiff must allege a substantive RICO violation. *Cofacredit,* 187 F.3d at 244–45; *Allen,* 2001 WL 293683 at *9 (S.D.N.Y.2001). Because the court holds that Plaintiff has properly alleged one RICO claim, the court denies the motion to dismiss the conspiracy claim.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted to the extent of dismissing the claim pursuant to 18 U.S.C. § 1962(b) and is, in all other respects, denied. The Clerk of the Court is

directed to terminate any outstanding motion.

SO ORDERED.